UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| INVENTORY RECOVERY CORPORATION, | Civ. No. 2:11-cv-01604 (WJM) |
| Plaintiff, | OPINION |
| v. | |
| ASHLEY A. GABRIEL, *et al.*, | |
| Defendants. | |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Inventory Recovery Corporation ("IRC") brings this action against Richard Gabriel ("R. Gabriel") and Ashley Gabriel ("A. Gabriel") ("Defendants"), alleging that Defendants engaged in fraudulent inducement with respect to, and breached an agreement for, the sale of 324 Internet domain names and related assets ("the Business"). This matter comes before the Court on the parties' cross motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, the parties' motions are **GRANTED in part** and **DENIED in part**.

I.   BACKGROUND

The following facts are undisputed unless otherwise noted.[1]

Plaintiff IRC is an Illinois corporation that conducts business in New Jersey. ECF 80-1 (P's Statement of Undisputed Material Facts) ("P's SUMF") ¶ 1. Matthew Coleman is the President of IRC. *Id.* ¶ 9. Defendants are the former owners of 324 Internet domain names that were used to sell homeopathic nutritional supplements ("the Business"). *Id.* ¶¶ 2-4, 39; ECF 81-2 (D's SUMF) at ¶ 3.

---

[1] To the extent Defendants "dispute" facts such as Plaintiff's use of the term "Business," arguing that there is "no business whose sale is the subject of this lawsuit," but rather, "324 domain names and other assets purchased by Plaintiff," these are distinctions without a difference and are not considered to be disputed facts. To the extent Defendants conclusorily dispute facts that are wholly supported by the record and fail to offer competing evidence, the facts supported by the record are taken to be true.

1

In September 2009, Defendants placed an advertisement in the "business for sale" section of *The Wall Street Journal*, describing the Business as "netting $150,000 per month," with "25,000 orders per year" and "fully automated."  P's SUMF ¶¶ 6-7. Coleman saw the advertisement and contacted R. Gabriel to inquire about the details. *Id*. ¶¶ 8-10.  R. Gabriel directed Coleman to the website http://50.com/2010.htm ("the Website") for information about the Business.  *Id*.  The Website provided, *inter alia*, financial information about the Business, stating that "every invoice and purchase order has been published so . . . it will not vary one penny."  *Id*. ¶ 12.  It further stated that "[o]ne full time employee is required to run the operation."  *Id*. ¶ 11.  According to the Website, the Business's largest expense was pay-per-click ("PPC) advertising, used to generate sales; the Business primarily relied on Google's PPC program, called "Adwords."  *Id*. ¶¶ 13, 18-20.

In January and February 2010, Plaintiff and R. Gabriel met twice to discuss general information about the Business, including revenue, PPC costs, and logistics.  *Id*. ¶¶ 23-25.  These conversations continued via e-mail and telephone; Plaintiff requested, on behalf of his accountants (Daniel and Stuart Levin), additional financial information, and R. Gabriel indicated that all the financial information he had was on the Website.  *Id*. ¶¶ 26-28.  Plaintiff informed R. Gabriel that, in order to close on the deal, it needed a representation that the information contained on the Website was "correct, accurate, and complete, as of the date of the agreement."  *Id*. ¶ 30.  R. Gabriel agreed, and stated that the numbers on the Website were "perfect."  *Id*. ¶ 31.  The purchase price was based on a 3.5 multiple of disclosed profits, as provided by R. Gabriel.  *Id*. ¶¶ 32-35.  The parties set a purchase price of $4,965,000, but agreed that Defendants would accept a plot of real estate in the Bahamas, an airplane, and the remaining balance in cash.  *Id.* ¶ 35.

On February 26, 2010, the parties closed the transaction by entering into a series of agreements, including, as is relevant here, a Sale and Transfer Agreement ("the Agreement").  *Id*. ¶ 38.  The Agreement contained the following representations and warranties:

> (1) Schedule B […] contains a copy of the financial statements of the Business as […] set forth on [the Website] and present fairly and accurately the financial position of the business" [hereinafter, "the financial statements warranty"]
>
> (2) Since the date of the last Financial Statement . . . to the knowledge of Seller or [R. Gabriel], no threatened occurrence or development exists which would materially adversely affect the [Business]; ["the materially adverse change clause"]
>
> (3) There are no contracts, agreements, commitments or

>arrangements, whether written or oral, express or implied, to which the Business is a party . . . relating to the employment or engagement of any employee or consultant ["the material contracts clause"].

ECF doc. 80, Ex. 24 (Agreement).

After taking control of the Business, Plaintiff discovered that R. Gabriel had omitted or misrepresented certain facts. Specifically, the financial information on the Website understated the Business's expenses and overstated its profits; the Business was no longer permitted to advertise on Google; and the Business had paid a consultant, Todd Rodenborn, to run its PPC advertising. ECF doc. ¶¶ 49-63.

### A. The Current Action

In August 2014, Plaintiff filed its Amended Complaint, asserting three causes of action arising from Defendants' sale of the Business to Plaintiff: (1) fraudulent inducement; (2) breach of contract; and (3) breach of duty of good faith and fair dealing. ECF doc. 52 at ¶¶ 60-74. Plaintiff seeks either recession of the Agreements or payment of damages in an amount to be determined at trial. *Id*.

Defendants move for summary judgment on the following grounds: (1) Plaintiff lacks standing; (2) Plaintiff's fraudulent inducement claim fails because Plaintiff did not rely upon any alleged misrepresentation; (3) Defendants did not breach any terms of the contract; and (4) Plaintiff has failed to prove breach of duty of good faith and fair dealing. ECF doc. 75. Defendants also raise a counterclaim against Plaintiff alleging the same causes of action Plaintiff raises, but with respect to the sale of the Bahamas property. *Id*.

Plaintiff cross-moves for partial summary judgment as to liability on all three counts in the Complaint and Defendants' counterclaim, arguing that the only triable issue of fact is the extent of Plaintiff's damages. ECF doc. 80-13.

In January 2016, the Court directed the parties to submit supplemental briefs on the issue of standing. ECF doc. 84.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides for summary judgment "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-

23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court considers all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. *Id.* The opposing party must do more than just rest upon mere allegations, general denials, or vague statements. *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Rather, to withstand a proper motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Anderson*, 477 U.S. at 256–57. When ruling on cross-motions for summary judgment, the court must consider the motions independently, *Williams v. Philadelphia Housing Auth.,* 834 F. Supp. 794, 797 (E.D. Pa. 1993), *aff'd*, 27 F.3d 560 (3d Cir. 1994), and view the evidence on each motion in the light most favorable to the party opposing the motion, *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

## III. DISCUSSION

### A. Standing

Defendants argue that IRC lacks standing to bring this action. Not so.

The issue of standing can be raised at any time. *See Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 280 (3d Cir. 2014). To have standing, a plaintiff must show: "(1) [an] injury-in-fact ... that is (a) concrete and particularized, and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) [a likelihood] that the injury will be redressed by a favorable decision." *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 223 (3d Cir. 2012) (internal quotations omitted).

Plaintiff has alleged that Defendants' conduct led to monetary harm, a "classic form of injury-in-fact." *Danvers Motor Co., Inc. v. Ford Motor Co.,* 432 F.3d 286, 293 (3d Cir. 2005). Plaintiff has clarified (through affidavits) that this injury is concrete, actual, and can be traced to Defendants' conduct: it owns the assets for which it allegedly overpaid due to Defendants' misrepresentations. ECF doc. 85-1–85-3. Plaintiff's injury could be redressed by the requested relief, in that Plaintiff would either recover the amount of money it allegedly overpaid, or be put in the same position it was in before, via recession of the Agreements. *See In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 245 (3d Cir. 2012). Defendants argue that, even if

Plaintiff owns the assets, it lack standing because it failed to mitigate its damages. But this argument is an affirmative defense that has no bearing on standing. *See Prusky v. ReliaStar Life Ins. Co.*, 532 F.3d 252, 258 (3d Cir. 2008). Accordingly, Plaintiff has shown standing. *See Fair Housing Council of Suburban Philadelphia v. Montgomery Newspapers*, 141 F.3d 71, 76 (3d Cir. 1998).

### B. Fraudulent Inducement (Count I)

In Count I, Plaintiff argues that Defendants fraudulently induced it to purchase the Business by intentionally misrepresenting and omitting material financial information about the Business, such as the Business's profits, advertising revenue, and expenses. Because questions of fact remain as to Plaintiff's reliance on Defendants' alleged misrepresentations, summary judgment is inappropriate.

The elements of a fraudulent inducement claim in New Jersey are: (1) a misrepresentation of a material fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other party rely on the misrepresentation; (4) reasonable reliance thereon; and (5) damages. *See Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (internal citations omitted). "In instances in which a party undertakes an independent investigation and relies on it, there can be no reliance." *Byrne v. Weichert Realtors*, 290 N.J. Super. 126, 137 (App. Div. 1996). However, the fact that a Plaintiff undertook its own independent investigation "does not resolve the question of whether [Plaintiff] relied on the result of this investigation." *Id*. Rather, if the extent to which Plaintiff relied upon Defendants' misrepresentations is disputed, factual questions remain that are best resolved at trial. *Id*. at 138-39; *see also Granat v. Puglisi*, No. 08-CV-05204, 2010 WL 551438, at *5 (D.N.J. Feb. 16, 2010).

Here, the extent to which Plaintiff relied on Defendants' misrepresentations is disputed. Defendants argue that Plaintiff did not rely on their representations because Coleman instead "chose . . . to rely on his professional [accountants], Daniel and Stuart Levin" to review the financial documents. ECF doc. 76-1 (Def. Br.), 26. As evidence of Plaintiff's reliance on an independent investigation, Defendants point to Coleman's emails to Stuart Levin directing him to "just do the cash portions and pump for information," and the fact that Coleman signed the Agreements without outside verification of the Business's advertising costs and other expenses. *Id*., 24-27. Plaintiff, however, contends that, when the Plaintiff relayed the Levins's request for more financial information to R. Gabriel, he responded by claiming that the information on the Website, which he had already provided, was "all he had." ECF doc. 80-1, 11. Consequently, Plaintiff required R. Gabriel to guarantee that the numbers on the Website were "perfect," and relied upon this misrepresentation in entering into the Agreements. *Id*. 11-12. Accordingly, summary judgment as to Plaintiff's fraudulent inducement claim is inappropriate.

5

### C. Breach of Contract (Count II)

In Count II, Plaintiff alleges that three separate Agreement clauses were breached. Defendants move for summary judgment as to these claims. Plaintiff cross-moves, arguing that Defendants are liable as a matter of law. Each side is entitled to partial summary judgment as to Count II.

To state a breach of contract claim, Plaintiff must allege that: (1) there was a contract; (2) that contract was breached; (3) the breach resulted in damages; and (4) the person suing for breach performed his own contractual duties. *Cotter v. Newark Housing Auth.*, 422 Fed. App'x. 95, 98 (3d Cir. 2011) (citation omitted). A party adequately pleads a breach of contract claim if it alleges a breach of the contract's representations and warranties provisions. *See Leder v. Shinfeld*, 609 F. Supp. 2d 386, 406-07 (E.D. Pa. 2009) (allegations that Defendant violated "representations and warranties of seller" in a stock purchase agreement were sufficient to state a claim for breach of contract); *Roadsafe Traffic Sys. v. Ameriseal Northeast Fla., Inc.*, No. 09-148, 2011 U.S. Dist. LEXIS 111058, at *42 (D. Del. Sept. 29, 2011) ("[D]efendants were in breach of the representations and warranties provisions of the [agreement] from the moment the agreement was signed").

#### i.     The Financial Statements Warranty

<u>First</u>, Plaintiff alleges that the financial statements warranty was breached because the Website did not fairly present the Business's financial position. Summary judgment is warranted in Plaintiff's favor as to this claim.

Plaintiff has presented evidence demonstrating that the financial statements on the Website failed to "present fairly and accurately the financial position of the business." *Compare* ECF doc. 80 Ex. 9 (Website indicating PPC advertising expenses of $704,052 in 2009); *with* Ex. 5 at ¶ 47, 76 (Def. Responses stating PPC advertising expenses of more than $1,000,000), Ex. 28 (D. Levin Aff. stating that, in 2009, the Business paid $1,036,518 for PPC advertising). Defendants have not provided any evidence to the contrary. Instead, Defendants argue that this claim fails because "Schedule B" was apparently not attached to the Agreement. But "Schedule B" was defined in the Contract as the financial statements set forth on the Website. Moreover, the parties' correspondence makes clear that the financial statements warranty was intended to serve as a representation that the financial information contained on the Website is "correct, accurate, and complete as of the date of the agreement." ECF doc. 80, Ex. 14. Therefore, the clause incorporates by reference the Website's financial statements. *Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 447 (3d Cir. 2003) ("Incorporation by reference is proper where the underlying contract makes clear reference to a separate document, the identity of the separate document may be ascertained, and incorporation of the document will not result in surprise or hardship"). Accordingly, summary judgment is **GRANTED** in favor of Plaintiff as to this clause.

### ii. The Material Adverse Change Clause

<u>Second</u>, Plaintiff alleges that Defendants breached the material adverse change clause. Defendants argue that there was no breach because, to the extent that there was a change in Google's advertising policy, the evidence shows that R. Gabriel did not become aware of the change until after closing (specifically, in March 2010). Defendants are correct.

Defendants have demonstrated through record evidence that neither the Business nor R. Gabriel had knowledge of the change in Google's policy until March 2010. *See* ECF 75-3, Ex. H (R. Gabriel Dep., stating that he did not know of the change in policy before closing); Ex. O (Email from Google indicating that the company did not speak to R. Gabriel until March 2010); Ex. O (Rodenborn Dep., stating that he did not discuss the change in policy with R. Gabriel in February 2010). Plaintiff has failed to provide any argument or evidence to the contrary. Instead, Plaintiff contends that Defendants are liable for the breach because Rodenborn's knowledge of the change in Google's policy is imputed to R. Gabriel as an agent of the company.

In New Jersey, "[t]here need not be an agreement between parties specifying an agency relationship; rather, the law will look at their conduct and not to their intent or their words as between themselves but to their factual relation." *Nat'l Indem. Co. v. Companhia Siderurgica Nacional S.A.*, No. CV 15-752, 2016 WL 520952, at *7 (D.N.J. Feb. 8, 2016) (internal citations omitted). The burden of proving agency is on the party asserting it. *See Newark Branch, NAACP v. Township of West Orange, N.J.*, 786 F. Supp. 408, 423 (D.N.J. 1992).

Here, Plaintiff has not provided any evidence of Rodenborn's agency relationship with R. Gabriel such that his knowledge of Google's policy change should be imputed to the Business. In fact, Plaintiff's chief allegation regarding Rodenborn is that Defendants failed to disclose Rodenborn's role in the Business, which indicates that he was *not* Defendants' agent. *See Nat'l Indem. Co.*, 2016 WL 520952 at *7. Accordingly, Defendants are **GRANTED** summary judgment as to this claim.

### iii. The Material Contracts Clause

<u>Third</u>, Plaintiff alleges that Defendants breached the material contracts clause in failing to disclose Rodenborn's contractual arrangement with the Business. Plaintiff is correct.

It is undisputed that, in 2009, Defendants paid Rodenborn's company $30,000 for his advertising consulting services. ECF doc. 80-1 (P's SUF) ¶¶ 49, 51, 54, 57. It is also undisputed that Defendants failed to disclose to Plaintiff, either on the Website or otherwise, the fact that Rodenborn provided these services. *Id*. ¶¶ 49, 64. Instead,

Defendants represented to Plaintiff that only one person was needed to run the Business (presumably, Coleman, the person set to step into R. Gabriel's shoes). ECF doc. 80 Ex. 6 (Coleman Dep.); Exs. 8-9 (Website referring to only one employee).

Defendants argue that their failure to disclose was not a breach of the contract because "there was no [written] agreement between Todd Rodenborn and the [Business]." ECF 81 at 23. But the fact that Rodenborn did not sign an employment contract with the Business is not dispositive. Rodenborn billed, and was paid for his services from the coffers of, the Business. ECF doc. 80 Ex. 29 (Rodenborn Invoices). This falls within the scope of an "arrangement" with a "consultant" that should have been divulged under the material contracts clause. Accordingly, Plaintiff's motion for summary judgment as to the material contracts clause is **GRANTED**.

### D. Breach of Good Faith and Fair Dealing (Count III)

In Count III, Plaintiff argues that Defendants' misrepresentations amount to a breach of the covenant of good faith and fair dealing. But, as Defendants correctly assert, "[t]he implied covenant cause of action is not intended to provide a plaintiff with additional damages for the bad faith breach of an express term of a contract." *Kurnik v. Cooper Health Sys.,* No. A-4686-06T1, 2008 WL 2829963, at *22 (N.J. Super. Ct. App. Div. July 24, 2008) (citing *Wade v. Kessler Inst.,* 172 N.J. 327 (2002)). Because the Court has already found in favor of Plaintiff on two parts of its breach of contract claim, and Plaintiff is not entitled to relief as to its third claim, Defendants' summary judgment motion is **GRANTED**.

### E. Defendants' Counterclaims

Defendants counterclaim for breach of contract, fraud, breach of the implied covenant, and misrepresentation regarding the Bahamas property. Specifically, Defendants claim that Coleman led R. Gabriel to believe that there were only current problems running electricity to the property, but did not tell R. Gabriel that there would *never* be electricity on the property and therefore, "sold R. Gabriel 'a sandbox.'" ECF doc. 81 at 25. Plaintiff's motion for summary judgment as to Defendants' counterclaims is **GRANTED**.

Plaintiff points out that the Agreement did not mention electricity and the property was conveyed "as is," and R. Gabriel visited the property himself and inspected it. P's SUF ¶¶ 66, 68. Defendants do not provide any affirmative evidence to contradict these facts, nor do they set forth, let alone meet, the legal standards for their claims. Accordingly, summary judgment is **GRANTED** in Plaintiff's favor as to Defendants' counterclaims regarding the Bahamas property.

8

## IV.   CONCLUSION

For the reasons stated above, the parties' motions for summary judgment are **GRANTED** in part and **DENIED** in part.  Defendants' motion is **GRANTED** as to Count III and the material adverse change clause claim in Count II, and **DENIED** as to Count I, the financial statements warranty and material contracts clause claims in Count II, and Defendants' counterclaims.  Plaintiff's motion for partial summary judgment is **GRANTED** as to Defendants' counterclaims and as to the financial statements warranty and material contracts clause claims in Count II, insofar as Plaintiff has established liability but there has been no damages determination, and **DENIED** as to Count I and Count III.  Accordingly, Count I will proceed, and the remaining Count II claims will proceed insofar as no damages determination has been made with respect to these claims.  An appropriate order follows.

      /s/ William J. Martini
     **WILLIAM J. MARTINI, U.S.D.J.**

**Date: April 6, 2016**